**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DTND SIERRA INVESTMENTS LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>BANK OF AMERICA, N.A. AND MARTY LACOUTURE, AS TRUSTEE,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. SA-12-CV-17-XR |

**ORDER**

On this date, the Court considered Defendant Bank of America N.A.'s Motion to Dismiss (docket no. 3), and the response and reply thereto.

**Background**

On December 5, 2011, Plaintiff DTND filed its "Original Petition, Application for Temporary Restraining Order and Temporary Injunction" in state court. The petition alleges the following:

On or about April 8, 2005, Mark Alejos, Veronica Reyes, and Jessica Reyes executed a Deed of Trust with lender Guaranty Bank securing property located at 5406 Kensington Run, San Antonio, Texas. On or about December 1, 2010, they defaulted on their obligations under the Deed of Trust, as well as on payment of the Canterbury Farms Homeowners Association's assessments for the property. On July 5, 2011, Canterbury Farms Homeowners Association foreclosed on the property, and Plaintiff DTND was the high bidder. Bank of America failed to redeem the property during the statutory redemption period.

Plaintiff's allegations concerning whether the property has been foreclosed are conflicting.

Plaintiff alleges that Bank of America now "seeks to wrongfully foreclose on [the] home although it did not properly notice the foreclosure pursuant to the deed of trust" and the foreclosure is "illegal and unenforceable." Petn. ¶ 14. However, Plaintiff also alleges that the substitute trustee's deed (which would issue after a foreclosure sale) is invalid, that Bank of America lost its interest in the property prior to the foreclosure sale, and that its failure to give notice of the foreclosure sale invalidates the sale. It appears from the briefing that no foreclosure sale has yet occurred, and the language indicating otherwise was included by mistake because Plaintiff has a number of similar lawsuits pending that did involve completed mortgage lien foreclosure sales.

Plaintiff asserts causes of action for "wrongful foreclosure," DTPA violations (including DTPA violations based on the Texas Debt Collection Act tie-in statute), and asserts that Bank of America is liable on principles of agency and respondeat superior. Plaintiff seeks actual and exemplary damages, an order quieting title, and injunctive relief. Plaintiff alleges that Defendant seeks to take immediate possession of the property through a writ of possession. Plaintiff further alleges that foreclosure for the property was scheduled for December 6, 2011.

The state district court judge issued a TRO ordering Bank of America to "immediately cease and desist from foreclosing upon the property" and set a hearing for December 19, 2011. Defendants removed the case on January 6, 2012, asserting diversity jurisdiction. There is no indication that a preliminary injunction hearing occurred.

**Jurisdiction**

In its removal notice, Bank of America ("BANA") argues that Marty Lacouture, the trustee, is improperly joined because Plaintiff is unable to establish a cause of action against him under state law. The notice asserts that, other than the list of parties and information regarding service of process,

the Petition contains no factual allegations against the trustee. The notice further states that because the trustee is named solely in his capacity as trustee under the deed of trust and because Plaintiff has failed to assert any facts to support a claim against him, there is no possibility of establishing a claim against him, such that his citizenship may be disregarded. Plaintiff did not file a motion to remand or argue that it was asserting any claims against Lacouture. However, this Court has a duty to examine its jurisdiction, and must remand if diversity is lacking, even if Plaintiff does not move to remand.

Other than listing Lacouture as a party, Plaintiff alleges no specific conduct on his part, and seeks no relief against him. Rather, it appears that he is joined solely in his capacity as trustee under the Deed of Trust, and Plaintiff seeks to enjoin Bank of America and its agents from foreclosing on the property. This Court has previously concluded that a substitute trustee named solely in order to enjoin foreclosure is a nominal party whose presence does not affect diversity jurisdiction. *Zavala v. M&T Trust Co.*, Civ. A. No. SA:11-CV-956 (docket no. 12) (W.D. Tex. Dec. 12, 2011). Accordingly, the Court finds that Lacouture's presence may be disregarded for purposes of diversity jurisdiction.

Public tax assessment records submitted by Defendant indicate that the property value exceeds $75,000, and thus the amount in controversy is sufficient. Accordingly, this Court finds that it has diversity jurisdiction over this case.

**Analysis**

**A. Claims against Lacouture**

Defendants' motion to dismiss asserts that Plaintiff's petition fails to state a claim against Defendant Lacouture because it does not articulate what claims, if any, Plaintiff is asserting against

Defendant Lacouture and what acts or omissions were allegedly committed by him. Though a trustee may be liable for certain conduct related to a foreclosure sale, no facts support such potential liability here. *See McIntosh v. U.S. Bank*, Civ. A. No. H-11-3874, 2012 WL 75141, at *4 (S.D. Tex. Jan. 10, 2012). As stated above, it appears that the petition does not assert any claims directly against Lacouture, but includes him solely as a nominal party to prevent the foreclosure.

Texas Property Code § 51.007 provides that a trustee may plead in the answer that the trustee is not a necessary party by a verified denial stating the basis for the trustee's reasonable belief that the trustee was named as a party solely in the capacity as a trustee under a deed of trust or other security instrument. If the plaintiff does not object or fails to file a timely verified response, the trustee shall be dismissed. *Id.* § 51.007(c). Dismissal of the trustee "shall not prejudice a party's right to seek injunctive relief to prevent the trustee from proceeding with a foreclosure sale." *Id.* § 51.007(e). Thus, where, as here, there are no claims asserted against the trustee individually, but the trustee is joined solely to prevent foreclosure, no claim is stated and the trustee may be dismissed under Rule 12(b)(6) for failure to state a claim.

**B. Claims based on failure to redeem**

Plaintiff argues that BANA lost its rights to the property by failing to redeem after the HOA foreclosure sale, and that it has no remaining interest in the property to foreclose. Thus, Plaintiff contends, any attempt by BANA to foreclose its mortgage lien is wrongful. BANA contends that because Plaintiff purchased the property at a junior lien foreclosure, it took title to the property subject to BANA's superior lien and that it had no obligation to redeem the property to retain its lien. Plaintiff contends that the 2009 amendments to the Property Code created a duty on the part of lienholders to redeem the property after an HOA foreclosure sale or lose their interests in the property.

After considering the statute, the common law, and the pleadings, the Court finds that Plaintiff's position lacks merit.

Texas Property Code § 209.011 is entitled "Right of Redemption After Foreclosure." It states in relevant part:

> (b) The owner of property in a residential subdivision or a lienholder of record may redeem the property from any purchaser at a sale foreclosing a property owners' association's assessment lien not later than the 180th day after the date the association mails written notice of the sale to the owner and the lienholder under Section 209.010. A lienholder of record may not redeem the property as provided herein before 90 days after the date the association mails written notice of the sale to the lot owner and the lienholder under Section 209.010, and only if the lot owner has not previously redeemed.
>
> (c) A person who purchases property at a sale foreclosing a property owners' association's assessment lien may not transfer ownership of the property to a person other than a redeeming lot owner during the redemption period.
>
> (d) To redeem property purchased by the property owners' association at the foreclosure sale, the lot owner or lienholder must pay to the association:
>
> > (1) all amounts due the association at the time of the foreclosure sale;
> > (2) interest from the date of the foreclosure sale to the date of redemption on all amounts owed the association at the rate stated in the dedicatory instruments for delinquent assessments or, if no rate is stated, at an annual interest rate of 10 percent;
> > (3) costs incurred by the association in foreclosing the lien and conveying the property to the lot owner, including reasonable attorney's fees;
> > (4) any assessment levied against the property by the association after the date of the foreclosure sale;
> > (5) any reasonable cost incurred by the association, including mortgage payments and costs of repair, maintenance, and leasing of the property; and
> > (6) the purchase price paid by the association at the foreclosure sale less any amounts due the association under Subdivision (1) that were satisfied out of foreclosure sale proceeds.
>
> (e) To redeem property purchased at the foreclosure sale by a person other than the property owners' association, the lot owner or lienholder:
>
> > (1) must pay to the association:

> (A) all amounts due the association at the time of the foreclosure sale less the foreclosure sales price received by the association from the purchaser;
> (B) interest from the date of the foreclosure sale through the date of redemption on all amounts owed the association at the rate stated in the dedicatory instruments for delinquent assessments or, if no rate is stated, at an annual interest rate of 10 percent;
> (C) costs incurred by the association in foreclosing the lien and conveying the property to the redeeming lot owner, including reasonable attorney's fees;
> (D) any unpaid assessments levied against the property by the association after the date of the foreclosure sale; and
> (E) taxable costs incurred in a proceeding brought under Subsection (a); and
> (2) must pay to the person who purchased the property at the foreclosure sale:
> (A) any assessments levied against the property by the association after the date of the foreclosure sale and paid by the purchaser;
> (B) the purchase price paid by the purchaser at the foreclosure sale;
> (C) the amount of the deed recording fee;
> (D) the amount paid by the purchaser as ad valorem taxes, penalties, and interest on the property after the date of the foreclosure sale; and
> (E) taxable costs incurred in a proceeding brought under Subsection (a).

(f) If a lot owner or lienholder redeems the property under this section, the purchaser of the property at foreclosure shall immediately execute and deliver to the redeeming party a deed transferring the property to the lot owner. If a purchaser fails to comply with this section, the lot owner or lienholder may file an action against the purchaser and may recover reasonable attorney's fees from the purchaser if the lot owner or the lienholder is the prevailing party in the action.

(g) If, before the expiration of the redemption period, the redeeming lot owner or lienholder fails to record the deed from the foreclosing purchaser or fails to record an affidavit stating that the lot owner or lienholder has redeemed the property, the lot owner's or lienholder's right of redemption as against a bona fide purchaser or lender for value expires after the redemption period.

(h) The purchaser of the property at the foreclosure sale or a person to whom the person who purchased the property at the foreclosure sale transferred the property may presume conclusively that the lot owner or a lienholder did not redeem the property unless the lot owner or a lienholder files in the real property records of the county in which the property is located:

(1) a deed from the purchaser of the property at the foreclosure sale; or
(2) an affidavit that:
(A) states that the property has been redeemed;
(B) contains a legal description of the property; and
(C) includes the name and mailing address of the person who redeemed the property.

...
(j) If a person other than the property owners' association is the purchaser at the foreclosure sale, before executing a deed transferring the property to the lot owner, the purchaser shall obtain an affidavit from the association or its authorized agent stating that all amounts owed the association under Subsection (e) have been paid. The association shall provide the purchaser with the affidavit not later than the 10th day after the date the association receives all amounts owed to the association under Subsection (e). Failure of a purchaser to comply with this subsection does not affect the validity of a redemption.

(k) Property that is redeemed remains subject to all liens and encumbrances on the property before foreclosure. Any lease entered into by the purchaser of property at a sale foreclosing an assessment lien of a property owners' association is subject to the right of redemption provided by this section and the lot owner's right to reoccupy the property immediately after redemption.

...
(n) After the redemption period and any extended redemption period provided by Subsection (m) expires without a redemption of the property, the association or third party foreclosure purchaser shall record an affidavit in the real property records of the county in which the property is located stating that the lot owner or a lienholder did not redeem the property during the redemption period or any extended redemption period.

(o) The association or the person who purchased the property at the foreclosure sale may file an affidavit in the real property records of the county in which the property is located that states the date the citation was served in a suit under Subsection (a) and contains a legal description of the property. Any person may rely conclusively on the information contained in the affidavit.

(p) The rights of a lot owner and a lienholder under this section also apply if the sale of the lot owner's property is conducted by a constable or sheriff as provided by a judgment obtained by the property owners' association.

TEX. PROP. CODE § 209.011. Section 209.011 was originally enacted in 2001 as part of Chapter 209,

the Texas Residential Property Owners Protection Act. The Act includes certain rights and protections for property owners subject to mandatory homeowner's associations, including a requirement for HOAs to provide notice of foreclosure to property owners and a right of redemption for property owners after foreclosure.

Section 209.011 was amended in 2009 by H.B. 3479, which provided a right of redemption for lienholders of record in addition to property owners.[1] Plaintiff argues that this amendment was intended to "to force lienholders to pay homeowner's association fees and dues," and created a duty on the part of purchase money lienholders and other lienholders to redeem in order to preserve their interests in the property.

Under Texas common law, foreclosure does not terminate interests in the foreclosed real estate that are senior to the lien being foreclosed, and the successful bidder at a junior lien foreclosure takes title subject to the prior liens. *Conversion Properties, LLC v. Kessler*, 994 S.W.2d 810, 813 (Tex. App.–Dallas 1999, pet. denied). Consequently, "[t]he purchaser takes the property charged with the primary liability for the payment of the prior mortgage and must therefore service the prior liens to prevent loss of the property by foreclosure of the prior liens, . . . [and as] a practical matter, a prospective purchaser usually will subtract the amount of any outstanding senior liens from the fair market value of the property in calculating its foreclosure bid." *Id.*; *see also Williams v. Nationstar Mortg., LLC*, 349 S.W.3d 90, 95 (Tex. App.–Texarkana 2011, pet. denied); *Atu v. Slaughter*, Civ. A. No. 14-06-00771, 2007 WL 2682198, at *3 (Tex. App.–Houston [14th Dist.] Sept. 13, 2007, no pet.).

[1] Section 209.010 was also amended to require the HOA to send notice of the foreclosure sale to each lienholder of record and inform them of the right to redeem the property under section 209.011. If the recorded instrument does not include an address for the lienholder, the HOA does not have a duty to notify the lienholder.

Applying this common-law rule, in *DiSanti v. Wachovia Bank, N.A.*, Civ. A. No. 2-08-330-CV, 2009 WL 1372970 (Tex. App.–Fort Worth May 14, 2009, pet. denied), the Fort Worth Court of Appeals held that DiSanti, a purchaser at an HOA foreclosure sale, took the property subject to the pre-existing vendor's lien held by Wachovia because he was not a bona fide purchaser. Rather, because DiSanti had at least constructive notice of the vendor's lien and deed of trust when he purchased the property at the foreclosure sale, he took the property subject to that superior lien.

Similarly, in *DiSanti v. Mortgage Electronic Registration Systems, Inc.*, Civ. A. No. 4:10-CV-103, 2010 WL 3338633 (E.D. Tex. Aug. 24, 2010), the Magistrate Judge concluded that claims similar to DTND's should be dismissed. The Magistrate Judge noted that "Plaintiff purchased the Property at an inferior loan foreclosure and took the Property subject to superior liens," and thus his quiet title claim should be dismissed for failure to allege that Plaintiff owned superior title to the property.

Here, HOA documents provide that assessment liens "shall be subordinate to the lien of any mortgage or mortgages now or hereinafter placed upon the Lots subject to assessment, provided, however, that such subordination shall apply only to the assessments which have become due and payable prior to the sale or transfer of such Lot pursuant to a decree of foreclosure, or any other proceeding or transfer in lieu of foreclosure." Ex. 3-4 Art. VI, § 9.[2] Plaintiff does not expressly argue that the HOA foreclosure sale alone extinguished superior liens on the property. Rather, Plaintiff contends that BANA's superior lien was extinguished by its failure to redeem after the HOA foreclosure sale took place. Plaintiff argues that the 2009 amendments to § 209.011 were intended

---

[2] The Court may consider documents relied on by Plaintiff in its Complaint as well as documents that are available in the public record without converting the motion to a motion for summary judgment. Plaintiff has not objected to the Court's consideration of the documents submitted by Defendant, all of which are in the public record.

to create a duty to redeem in lienholders, and that Defendant's construction of the statute would render the amendments null and without effect. Plaintiff contends that the "change in the statute was clearly made in order to force lienholders to pay homeowner's association fees and dues." Further, because the statute provides that "[p]roperty that is redeemed remains subject to all liens and encumbrances on the property before foreclosure," Plaintiff argues that by implication property that is not redeemed is no longer subject to such liens.

As an initial matter, the Court notes that the statute nowhere states that lienholders have a "duty" to redeem; rather, this section deals with a "right" to redeem.[3] Thus, a lienholder of record "*may* redeem" if the lot owner does not, and the purchaser at the HOA foreclosure sale may not transfer the property to another party during the redemption period. To redeem the property, the lienholder must pay amounts due to the HOA, as well as interest and costs, and pay the purchase price to the purchaser. If the lot owner or the lienholder redeems the property, the purchaser must immediately execute a deed transferring the property to the lot owner. This deed (or an affidavit stating that the property has been redeemed) must then be recorded before the expiration of the redemption period – if it is not, "the lot owner's or lienholder's right of redemption as against a bona fide purchaser or lender for value expires after the redemption period." TEX. PROP. CODE § 209.011(g). If no deed or affidavit is recorded, the purchaser at the foreclosure sale or a person to whom the purchaser transferred the property "may presume conclusively that the lot owner or a lienholder did not redeem the property." *Id.* § 209.011(h). If the property is not redeemed, the HOA

[3] Judge Biery previously dismissed another of Plaintiff's lawsuits on the basis that Plaintiff purchased the property subject to a superior purchase money mortgage lien on the property, and "[t]here is no language in the statute which strips a priority lienholder of its right to foreclose or otherwise disturbs the longstanding law with respect to lien priority and foreclosure." *See DTND v. Wells Fargo*, Civ. A. No. SA:11-CV-1116-FB. Judge Biery further noted that the statute does not provide that, if a priority lienholder does not redeem the property, then it cannot foreclose on its senior lien, which was not eliminated by the HOA foreclosure. *Id.*

or purchaser must record an affidavit stating that the property was not redeemed. *Id.* § 209.011(n).

Thus, although the statute provides certain consequences for failure to file the deed or an affidavit reflecting the redemption (limited to affecting the lienholder's rights as against a bona fide purchaser or lender for value), nowhere does it state that failure to redeem by a superior lienholder would extinguish the superior lien. The Legislature is presumed to know existing law when it enacts a statute. *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). Thus, it is presumed to know that superior lienholders retain their lien priority after foreclosure of a junior lien, and had it intended such an extreme consequence for the failure of superior lienholders to redeem, it presumably would have expressly so stated.

Before the 2009 amendments, only a lot owner had a right to redeem property after an HOA foreclosure sale. Though Plaintiff argues that the fact that the statute says that "property that is redeemed remains subject to all liens and encumbrances on the property before foreclosure" means that the converse is true for properties that are not redeemed, that language was in the statute before the 2009 amendments granting lienholders a right to redeem. Accordingly, it could not have been intended to require superior lienholders to redeem or forfeit their liens. Rather, that language applies to inferior liens and encumbrances that may have been extinguished by the foreclosure but are reinstated after redemption.

Although superior lienholders do not lose their interest after an HOA foreclosure, inferior lienholders may lose their interest. Thus, section 209.0091 was recently added to require HOAs to provide notice and opportunity to cure the delinquency to *inferior/subordinate* lienholders *before*

foreclosing.[4] But no such notice to superior lienholders is required – they are required to get notice only *after* foreclosure, and then only if their contact information is included in the recorded documents. It would be remarkable if the Legislature had created a duty to redeem with penalty of forfeiture of superior liens, but then required notice only if the address is located in the public record. The failure to require pre-foreclosure notice with an opportunity to cure for superior lienholders indicates the Legislature's intent to preserve existing law regarding superior liens.

Moreover, the legislative history bears out the fact that the 2009 amendments were intended to benefit all lienholders of record by creating a right of redemption, and not to require superior lienholders to redeem or forfeit their interests. The Bill Analysis for S.B. 2121, the language of which was incorporated into H.B. 3479 states that the bill "will help lenders maintain and protect their lien position, will permit homeowners' associations to be paid their assessments, and will protect the ownership interest of the owners, who may be able to work out a plan with their lender to stay in the home." Thus, the bill "authorizes a lienholder of record of property in a residential subdivision to

---

[4] In the most recent legislative session, the Legislature added section 209.0091, which requires HOAs to provide notice of potential foreclosure to junior lienholders and give them an opportunity to cure. The House Research Organization's bill analysis states that supporters of the bill argued:

If there is a superior lien on the property, such as a mortgage lien from a bank, then whoever purchases the foreclosed property does so subject to that lien. Superior lien holders are guaranteed payment from a foreclosure sale. A subordinate lien holder, however, could lose its interest in the property if a foreclosure sale did not generate enough funds to satisfy those interests.

While most associations, in their restrictive covenants, establish assessment dues as subordinate liens, there are some that allow assessment dues to assume the status of superior liens. In these instances, subordinate lien holders may lose their interest without any knowledge that an association had initiated foreclosure proceedings. This is a particular problem in nonjudicial foreclosures, which do not entail formal court proceedings and are subject only to minimal notice requirements.

HB1228 would require HOAs to provide foreclosure notice to superior lien holders or to subordinate lien holders if the assessment lien was superior. This would allow those entities enough time to determine if they wished to take action to forestall an imminent foreclosure, such as by settling the delinquent dues.

Opponents of the bill cited administrative burdens associated with notice requirements, and stated that "[s]uperior lien holders would, moreover, have little interest in receiving a foreclosure notice, since they almost always will recover their interest when the property is sold."

HB1228 was passed, effective January 1, 2012.

redeem the property from any purchaser at a sale foreclosing a property owners' association's assessment lien not later than the 180th [day] after the date the association mails the written notice as required." House Bill Analysis, C.S.S.B. 2121. The House Research Organization bill analysis summarizes the subject of the bill as "allowing lienholders to redeem property owners' association foreclosures." Thus, the purpose of the bill was simply to *allow* lienholders to redeem the property by meeting the same requirements as the lot owner. *Id.* There is no mention in the legislative history of an intent to *require* superior lienholders to redeem or forfeit their liens. Thus, consistent with the statute's plain language, the legislative history indicates that section 209.011 gives a right to redeem as a benefit to lienholders, but does not create a duty with penalty of forfeiture of any surviving interests upon failure to redeem.[5]

In this case, the undisputed facts show that the HOA lien was subordinated to the mortgage lien, and thus the foreclosure did not extinguish BANA's superior lien. And, as a matter of law, BANA's lien was not extinguished by the failure to redeem. Accordingly, the Court concludes that

---

[5] Supporters of the bill also said that "[t]he bill would protect lot owners as well by requiring the deeds of trust be recorded in their name should the lienholder redeem the foreclosed property. The bill would benefit lienholders, lot owners, and property owners' associations, while discouraging speculators at foreclosure sales who prey on other parties with interest in a property." H.R.O. Bill Analysis of S.B. 2121 (5/20/2009). Although there is some language in the legislative history that could be read to support Plaintiff's position, such as that "the lender should be permitted to redeem the property, thereby paying the association and retaining its lien position," Senate Research Center Bill Analysis, C.S.S.B. (4/20/2009), this language does not require the conclusion that failure to pay would result in loss of lien position for superior lienholders. Even superior lienholders may remain vulnerable to loss of position if the property is not redeemed and is later sold to a bona fide purchaser (as recognized by § 209.011(g)). *See DiSanti*, 2009 WL 1372970 (evaluating claim that purchaser at HOA foreclosure sale was a bona fide purchaser who took property without being subject to prior claims). Thus, allowing superior lienholders to redeem helps them protect their lien position. Further, the right of redemption benefits all junior lienholders, including mortgage lienholders with junior liens. *See e.g.*, Bill Analysis of C.S.H.B. 2392 (81st Leg. Session, R.S.)("In many cases, the association lien is subordinated by restrictive covenants to a voluntary mortgage, but not in all cases and not for all voluntary liens. Since a defaulting owner is often absentee and the foreclosure is for a low dollar amount, the lender should be permitted to redeem the property, thereby paying the association and retaining its lien position."). Thus, the plain purpose of the 2009 amendments was to benefit associations by permitting redemption and to benefit lienholders by allowing them to redeem and retain their lien interests. Defendant's construction of the statute is consistent with these purposes and does not render the amendments without effect, as Plaintiff contends.

Plaintiff's claim that BANA has no interest in the property to foreclose fails as a matter of law, and BANA's motion to dismiss claims based on this legal premise is granted.

**C. Claim for wrongful foreclosure**

Plaintiff alleges that BANA "now seeks to wrongfully foreclose on a home although it did not properly notice the foreclosure pursuant to the deed of trust," rendering "the foreclosure sought . . . illegal and unenforceable." Petn. ¶ 14. Plaintiff alleges that "even if Bank of America NA had not lost its interest in the property, Bank of America NA's failure to give notice of foreclosure sale invalidates the substitute trustee's sale." Petn. ¶ 17. Plaintiff further alleges that "Defendant, by their actions as alleged herein, committed a wrongful foreclosure" and "defendant did not give valid notice of the foreclosure" and therefore "the foreclosure by defendant was wrongful." Petn. ¶ 18.

As noted, there does not appear to have been a foreclosure sale on this property. Rather, Plaintiff appears to have included language by mistake. The Affidavit filed by the DTND investment manager and agent in support of the TRO states, "I was never formally noticed nor did I ever receive a notice of foreclosure from Bank of America NA, its trustees, or any of its agents. Therefore, I believe the failure to give me notice to be a violation of the deed of trust based upon my review of the deed of trust." The affidavit also states that he researched "and found that the property located on 5406 Kensington Run is up for foreclosure sale on December 6, 2011."

BANA argues that Plaintiff cannot assert a claim for wrongful foreclosure because no foreclosure sale ever occurred. The Court agrees that, to the extent Plaintiff is arguing that the substitute trustee's deed is invalid or asserts that a completed foreclosure was invalid, such claims fail because no foreclosure has occurred. However, the Court concludes that Plaintiff's claim is properly construed not as claim for post-foreclosure wrongful foreclosure, but of breach of the notice

requirements in the Deed of Trust. If valid, this claim could entitled Plaintiff to injunctive relief preventing the foreclosure until the notice requirements are satisfied.

"Compliance with the notice condition contained in the deed of trust and as prescribed by law is a prerequisite to the right of the trustee to make the sale." *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983). Plaintiff's Petition alleges that "defendant did not give valid notice of the foreclosure." Petn. ¶ 18. The petition and briefing focus on the notice provisions of the Deed of Trust rather than the statutory notice provisions. The Affidavit in support of the TRO states only that notice was not given to DTND's investment manager as required by the Deed of Trust. Plaintiff's response to the motion to dismiss asserts that, pursuant to the Trustee's Deed Following Foreclosure, Plaintiff is the lawful owner of the property and "obtained all rights of the borrower under the Deed of Trust." However, BANA's obligations under the Deed of Trust are determined solely by the Deed of Trust (and/or the Note that it secures) and by applicable statutes/regulations.

Plaintiff points to no specific provision in the Deed of Trust that has been violated. Regarding notices, the Deed of Trust states that "Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. . . . The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender." *Id.* ¶ 15. Paragraph 22 requires the Lender to "give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument" informing Borrower of the default and the right to cure. Further, if Lender invokes the power of sale, "Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to

Borrower in the manner prescribed by Applicable Law." "Borrower" is defined in the Deed of Trust as Mark Alejos, Jessica Reyes, and Veronica Reyes.

Regarding sale or transfer of the property, the Deed of Trust provides that "[i]f all or any part of the Property or any Interest in the Property is sold or transferred . . . without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument," unless prohibited by law. *Id.* ¶ 18. The Deed of Trust provides that "Successor in Interest of Borrower" means "any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument." Ex. 3-3, Definitions (Q). It further provides that "any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. . . . The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender." *Id.* ¶ 13 (emphasis added). There does not appear to be any other provision in the Deed of Trust granting rights to a Successor in Interest of Borrower, and Plaintiff does not allege that it assumed Borrower's obligations under the Deed in writing or was approved by the Lender such that it would have the rights of a Borrower. Accordingly, Plaintiff fails to allege facts tending to show that it was entitled to any notice under the Deed of Trust. *See American Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 588 (Tex. 1975) ("There is no requirement that personal notice be given to persons who were not parties to the deed of trust."). Accordingly, Plaintiff fails to state a claim for attempted wrongful foreclosure based on lack of notice pursuant to the Deed of Trust.

Although the Petition does not clearly allege a violation of the statutory notice requirements,

such a claim also fails. Section 51.002(d) provides, "Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)." TEX. PROP. CODE § 51.002(d). Once that 20-day notice period expires, notice of the sale must be given at least 21 days before the date of the sale and served "by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt." *Id.* § 51.002(b)(3).

With regard to notice of default and right to cure, the plain language of § 51.002(d) indicates that notice must be sent to "a debtor in default" under an instrument securing real property "used as the debtor's residence." *See Teachout v. Kitchen*, Civ. A. No. 14-03-00215-CV, 2004 WL 794383, at *2-3 (Tex. App.–Houston [14th Dist.] April 15, 2004, no pet.) (concluding that the Legislature intended section 51.002(d) to apply only to real property currently used as the debtor's residence). Plaintiff DTND has not alleged that it is a "debtor in default" on an instrument securing the property as its residence, such that it would be required to be sent notice under § 51.002(d). Nor has it alleged that it was a "debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt" such that it would be entitled to notice of sale pursuant to § 51.002(b)(3).

In *Rodriguez v. Ocwen Loan Servicing, Inc.*, 306 Fed. App'x 854 (5th Cir. 2009), the Fifth Circuit considered the notice due to a purchaser of property. The Fifth Circuit held that the plaintiff could not rely on § 51.002 as the source of a right to personal notice because he did not allege that he was a debtor according to the records of the mortgage servicer of the debt. *Id.* at 856. Further, the Fifth Circuit held, under Texas law there is no legal requirement that personal notice of a foreclosure

be sent to persons not parties to the deed of trust. *Id.* (citing *Stanley v. CitiFinancial Mortgage Co.*, 121 S.W.3d 811, 817 (Tex. App.–Beaumont 2003, pet. denied)).[6] The plaintiff failed to allege that he was a party to the deed of trust or otherwise a "debtor" on the loan, and the Substitute Trustee's Deed attached to his petition listed only the sellers as debtors.

The Fifth Circuit also rejected a claim of equitable right to notice based on the mortgagee's actual notice of his ownership interest, stating that the notification duty extends "'to the parties named on the requisite documents as the debtors, and not to other parties, *known or unknown*.'" *Id.* (quoting *Casstevens v. Smith*, 269 S.W.3d 222, 229-30 (Tex. App.–Texarkana 2008, pet. denied))(emphasis in original). Therefore, the court held, even if the mortgagee/mortgage servicer knew of the purchaser's interest in the property, Texas law imposed no requirement for it to provide notice to the purchaser under the circumstances. *Id.*; See *also Lawson v. Gibbs*, 591 S.W.2d 292, 295 (Tex. Civ. App.–Houston [14th Dist.] 1979, writ ref'd n.r.e.) ("Had Main Bank been aware that appellee Gibbs had purchased the property, such knowledge would have imposed no legal duty to give Gibbs notice of the sale."). Similarly, in *U.S. Bank N.A. v. Farhi*, Civ. A. No. 05-07-01539, 2009 WL 2414484 (Tex. App.–Dallas Aug. 7, 2009, no pet.), the court of appeals found no authority supporting the proposition that a mortgagee bank was required to provide notice to an intervening purchaser of the mortgaged property before foreclosure. Thus, Plaintiff's argument that its deed was recorded and thus BANA knew or should have known that Plaintiff had acquired rights in the property does not confer upon it a right to notice.[7]

---

[6] *See also American Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 588 (Tex. 1975).

[7] The Court further notes that, whether a property owner *received* statutorily required notice is not the relevant inquiry – the statute creates only a constructive notice scheme, which is complied with upon mailing of the required notices. *Rodriguez*, 306 Fed. App'x at *2 ("Rodriguez also claims that the Olivareses did not actually receive notice of the May 1 sale. This assertion alone cannot state a claim for relief because Texas law only imposes a constructive-notice

Plaintiff's claims based on a lack of notice therefore fail to state a claim.

**D. Claims for DTPA/TDCPA violations**

Plaintiff incorporates its prior factual allegations and alleges that BANA "engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act . . . as alleged herein below." Petn. ¶ 19. Plaintiff then alleges that Defendant "engaged in false, misleading or deceptive acts as provided by the following 'tie'in- statute, the Debt Collection Act" as follows:

> a. § 392.304(a)(19) In debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer,
>
> b. Plaintiff alleges that Defendants actions in foreclosing on the property without giving proper notice to the Plaintiff is a deceptive means to collect a debt as set out in § 392.304(a)(19).

Petn. ¶ 20. BANA argues that Plaintiff's DTPA claim fails because it cannot qualify as a consumer, that Plaintiff has not and cannot allege that BANA is a debt collector, and that Defendant has committed no wrongful act under the TDCPA. BANA also contends that Plaintiff's claims must fail because it cannot establish that it was entitled to notice of the sale.

Plaintiff asserts that it filed the petition in state court, which "permits great latitude in the specificity of its pleadings" and asks "for leave to amend its complaint if the court felt more specific pleading were necessary." Plaintiff also contends that the Petition "clearly asserts that BANA was acting as a debt collector."

Plaintiff alleges no specific wrongful conduct other than a failure to give notice, and the Court

---

requirement."). Thus, a plaintiff must plead and prove that the required notices were never mailed.

has already concluded that Plaintiff has not established that it was entitled to notice. Accordingly, the failure to provide notice is not wrongful or a violation of the DTPA or TDCPA. The assertion that BANA used fraudulent and deceptive means to collect a debt or obtain information is simply a recitation of the statutory language, and thus is conclusory and fails to state a claim. Therefore, the motion to dismiss this claim is granted.

**Conclusion**

For the reasons stated herein, Defendant BANA's Motion to Dismiss (docket no. 3) is GRANTED. However, Plaintiff is granted leave to amend to attempt to state a claim. If Plaintiff wishes to file an Amended Complaint, it must do so no later than **May 25, 2012**. Failure to file an amended complaint by that date or to request an extension of time to do so will result in a final dismissal of this case.

It is so ORDERED.

SIGNED this 15th day of May, 2012.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE